# IN THE SUPREME COURT OF TEXAS

════════════

No. 14-0302

════════════

CHESAPEAKE EXPLORATION, L.L.C. AND
CHESAPEAKE OPERATING, INC., PETITIONERS,

v.

MARTHA ROWAN HYDER, INDIVIDUALLY, AND AS INDEPENDENT EXECUTRIX AND
TRUSTEE UNDER THE WILL OF ELTON M. HYDER, JR., DECEASED, AND AS
TRUSTEE UNDER THE ELTON M. HYDER JR. RESIDUARY TRUST, AND AS TRUSTEE
OF THE ELTON M. HYDER JR. MARITAL TRUST; BRENT ROWAN HYDER,
INDIVIDUALLY AND AS TRUSTEE OF THE CHARLES HYDER TRUST AND AS
TRUSTEE OF THE GEOFFREY HYDER TRUST; WHITNEY HYDER MORE,
INDIVIDUALLY AND AS TRUSTEE OF THE ELTON MATTHEW HYDER IV TRUST, AS
TRUSTEE OF THE PETER ROWAN MORE TRUST, AS TRUSTEE OF THE LILI LOWDON
HYDER TRUST, AND AS TRUSTEE OF THE SAMUEL DOUGLAS MORE TRUST; AND
HYDER MINERALS, LTD., RESPONDENTS

════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════════════

**Argued March 24, 2015**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE JOHNSON, JUSTICE BOYD, and JUSTICE DEVINE joined.

JUSTICE BROWN filed a dissenting opinion, in which JUSTICE WILLETT, JUSTICE GUZMAN and JUSTICE LEHRMANN joined.

Generally speaking, an overriding royalty on oil and gas production is free of production costs but must bear its share of postproduction costs unless the parties agree otherwise. The only

question in this case is whether the parties' lease expresses a different agreement. We conclude it does and therefore affirm the court of appeals' judgment.[1]

The Hyder family leased 948 mineral acres in the Barnett Shale.[2] Chesapeake Exploration, L.L.C., acquired the lessee's interest.[3] The lease was negotiated and drafted by counsel for the Hyders and the original lessee.

The lease contains three royalty provisions. One is for 25% of "the market value at the well of all oil and other liquid hydrocarbons". No oil is produced from the lease. Another royalty is for 25% "of the price actually received by Lessee" for all gas produced from the leased premises and sold or used.[4] The lease adds that the royalty is expressly "free and clear of all production and post-production costs and expenses," and lists examples of various expenses.[5] The third provision, the one here in dispute, calls for "a perpetual, cost-free (except only its portion of production taxes)

---

[1] 427 S.W.3d 472 (Tex. App.—San Antonio 2014).

[2] The Hyder respondents include Martha Rowan Hyder, individually and as independent executrix and trustee under the Will of Elton M. Hyder Jr., deceased, as trustee under the Elton M. Hyder Jr. Residuary Trust, and as trustee of the Elton M. Hyder Jr. Marital Trust; Brent Rowan Hyder, individually and as trustee of the Charles Hyder Trust and as trustee of the Geoffrey Hyder Trust; Whitney Hyder More, individually and as trustee of the Elton Matthew Hyder IV Trust, as trustee of the Peter Rowan More Trust, as trustee of the Lili Lowdon Hyder Trust, and as trustee of the Samuel Douglas More Trust; and Hyder Minerals, Ltd. We refer to the lessors as the Hyders.

[3] Petitioners are Chesapeake Exploration, L.L.C., and an affiliate that acts as its agent for all natural gas operations on the property, Chesapeake Operating, Inc. We refer to them collectively as Chesapeake.

[4] The lease provides that this royalty is "for natural gas, including casinghead gas and other gaseous substances produced from the Leased Premises and sold or used on or off the Leased Premises" and that "[i]n no event shall the volume of gas used to calculate Lessors' royalty be reduced for gas used by Lessee as fuel for lease operations or for compression or dehydration of gas."

[5] The royalty provision continues: "including but not limited to, production, gathering, separating, storing, dehydrating, compressing, transporting, processing, treating, marketing, delivering, or any other costs and expenses incurred between the wellhead and Lessee's point of delivery or sale of such share to a third party. Lessor's royalty share shall also be free and clear of all costs of construction, operation or depreciation of any plant or other facilities or equipment used for processing or treating paid production."

overriding royalty of five percent (5.0%) of gross production obtained" from directional wells drilled on the lease but bottomed on nearby land.[6] The lease contains two other provisions relevant to our consideration. One is this disclaimer: "Lessors and Lessee agree that the holding in the case of *Heritage Resources, Inc. v. NationsBank*, 939 S.W. 2d 118 (Tex. 1996) shall have no application to the terms and provisions of this Lease." The other is that "each Lessor has the continuing right and option to take its royalty share in kind". No lessor has ever exercised that right. While the overriding royalty appears to be in kind, the parties do not disagree that it can be paid in money.

The Hyders and Chesapeake agree that the overriding royalty is free of production costs; they dispute whether it is also free of postproduction costs. There are twenty-nine producing gas wells on the leased or pooled land, seven of which are directional wells bottomed on and producing from lands not subject to the lease. Chesapeake sells all the gas produced to an affiliate, Chesapeake Energy Marketing, Inc. ("Marketing"), which then gathers and transports the gas through both affiliated and interstate pipelines for sale to third-party purchasers in distant markets. Marketing pays Chesapeake a "gas purchase price" for volumes determined at the wellhead or—during earlier periods—at the terminus of Marketing's gathering system. The gas purchase price is calculated based on a weighted average of the third-party sales prices received (the "gas sales price") less

---

[6] The lease states that "Lessee shall, within sixty (60) days from the date of first production from each [directional] well, convey to Lessors" the overriding royalty. The parties treat this royalty provision like a conveyance, and so do we. Only two of the respondents, Brent Rowan Hyder and Whitney Hyder More, are alleged to own overriding royalties. Because all respondents join in the arguments made here, we refer to the overriding royalties as due to the Hyders.

postproduction costs.[7] The overriding royalty Chesapeake pays the Hyders is 5% of the gas purchase price. The Hyders contend that their overriding royalty should be based on the gas sales price.

After a bench trial, the trial court rendered judgment for the Hyders, awarding them $575,359.90 in postproduction costs that Chesapeake wrongfully deducted from their overriding royalty. The court of appeals affirmed.[8] We granted Chesapeake's petition for review.[9]

In *Heritage Resources, Inc. v. NationsBank*, we noted that a royalty is free of production expenses but "usually subject to post-production costs, including taxes . . . and transportation costs."[10] But we added that "the parties may modify this general rule by agreement."[11] We long ago defined an overriding royalty as "a given percentage of the gross production carved from the working interest but, by agreement, not chargeable with any of the expenses of operation."[12] That agreement is now understood to be part of an overriding royalty, and an overriding royalty is like a landowner's

---

[7] Marketing deducts, as postproduction costs, gathering and transportation costs and a 3% marketing fee.

[8] 427 S.W.3d 472 (Tex. App.—San Antonio 2014).

[9] 58 Tex. Sup. Ct. J. 227 (Jan. 30, 2015).

[10] 939 S.W.2d 118, 121–122 (Tex. 1996); *accord French v. Occidental Permian Ltd.*, 440 S.W.3d 1, 3 (Tex. 2014).

[11] *Heritage Res.*, 939 S.W.2d at 122; *accord French*, 440 S.W.3d at 3.

[12] *MacDonald v. Follett*, 180 S.W.2d 334, 336 (Tex. 1944).

4

royalty in that it usually bears postproduction costs but not production costs,[13] though the parties may agree to a different arrangement.[14]

Two of the royalty provisions in the Hyder–Chesapeake lease are clear. The oil royalty bears postproduction costs because it is paid on the market value of the oil at the well.[15] The market value at the well should equal the commercial market value less the processing and transporting expenses that must be paid before the gas reaches the commercial market.[16]

The gas royalty in the lease does not bear postproduction costs because it is based on the price Chesapeake actually receives for the gas through its affiliate, Marketing, after postproduction costs have been paid.[17] Often referred to as a "proceeds lease", the price-received basis for payment is sufficient in itself to excuse the lessors from bearing postproduction costs. And of course, like any

---

[13] *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 180 n.1 (Tex. 2012) ("An overriding royalty is an interest in the oil and gas produced at the surface, free of the expense of production." (internal quotation marks omitted)); *see also Alamo Nat'l Bank v. Hurd*, 485 S.W.2d 335, 339 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.) ("An overriding royalty is first and foremost a royalty interest. In other words, it is an interest in oil and gas produced at the surface, free of the expenses of production.").

[14] *See Heritage Res.*, 939 S.W.2d at 122 (noting that parties may agree to modify the general rule that a royalty, though not subject to production costs, is subject to postproduction costs); 8 H. WILLIAMS & C. MEYERS, OIL AND GAS LAW: MANUAL OF OIL AND GAS TERMS 731 (2014) ("One of the most important aspects of an 'overriding royalty' . . . is that it is a 'royalty,' *viz.*, in the absence of an express agreement to the contrary it is free of costs of which the lessor's royalty is free and it is subject to the costs to which the lessor's royalty is subject.").

[15] *See Heritage Res.*, 939 S.W.2d at 122.

[16] *Id.*

[17] Chesapeake does not dispute that "the price actually received by the Lessee" for purposes of the gas royalty is the gas sales price its affiliate, Marketing, received, nor do the Hyders argue that the gas sales price was unfair. *Cf. Phillips Petroleum Co. v. Yarbrough*, 405 S.W.3d 70, 78 (Tex. 2013) ("A duty to market is implied in leases that base royalty calculations on the price received by the lessee for the gas. *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 373–74 (Tex. 2001).").

other royalty, the gas royalty does not share in production costs. But the royalty provision expressly adds that the gas royalty is "free and clear of all production and post-production costs and expenses," and then goes further by listing them. This addition has no effect on the meaning of the provision.[18] It might be regarded as emphasizing the cost-free nature of the gas royalty, or as surplusage.

The overriding royalty in the Hyder–Chesapeake lease is not as clear as either of the other two royalty provisions. The Hyders argue that the requirement that the overriding royalty be "cost-free" can only refer to postproduction costs, since the royalty is by nature already free of production costs without saying so. But as with the gas royalty, "cost-free" may simply emphasize that the overriding royalty is free of production costs. Chesapeake argues that "cost-free overriding royalty" is merely a synonym for overriding royalty, and a number of lease provisions discussed in other cases support that view.[19]

The exception for production taxes, which are postproduction expenses,[20] cuts against Chesapeake's argument. It would make no sense to state that the royalty is free of production costs, except for postproduction taxes (no dogs allowed, except for cats). The exception for taxes might be taken to indicate that "cost-free" refers only to postproduction costs. But a taxes exception to

---

[18] The court of appeals reasoned otherwise, relying on the "free and clear" language to conclude that both the oil and gas royalties are free of postproduction costs. 427 S.W.3d at 477–478. Chesapeake has not challenged that ruling in this Court.

[19] *See, e.g.*, *McMahon v. Christmann*, 303 S.W.2d 341, 343 (Tex. 1957) (lease providing an "overriding royalty . . . free of cost or expense"); *R.R. Comm'n v. Am. Trading & Prod. Corp.*, 323 S.W.2d 474, 477 (Tex. Civ. App.—Austin 1959, writ ref'd n.r.e.) (agreement reserving an "overriding royalty of 3/8ths of 8/8ths of all the oil, gas and other minerals produced and saved from said lands . . . free of all costs, except taxes"); *Midas Oil Co. v. Whitaker*, 123 S.W.2d 495, 495 (Tex. Civ. App.—Eastland 1938, no writ) (assignor's retention of "an overriding royalty of 7/32 of all oil, gas or other minerals . . . free of cost to himself").

[20] *Heritage Res.*, 939 S.W.2d at 122.

6

freedom from production costs is not uncommon in leases,[21] suggesting only that lease drafters are not always driven by logic.

We thus disagree with the Hyders that "cost-free" in the Hyder–Chesapeake overriding royalty provision cannot refer to production costs. As noted above, drafters frequently specify that an overriding royalty does not bear production costs even though an overriding royalty is already free of production costs simply because it is a royalty interest.[22] But Chesapeake must show that while the general term "cost-free" does not distinguish between production and postproduction costs and thus literally refers to all costs, it nevertheless cannot refer to postproduction costs here.

Chesapeake argues that because the overriding royalty is paid on "gross production", the reference is to production at the wellhead, making the royalty tantamount to one based on the market value of production at the wellhead, which bears postproduction costs. "Gross" means "[u]ndiminished by deduction; entire".[23] We agree with Chesapeake, as do the Hyders, that "gross production" is the entire amount of gas produced, including gas used by Chesapeake or lost in postproduction operations. But the parties do not dispute that the overriding royalty may be paid in cash and not in kind, though the Hyders retained the right to take it in kind. Specifying that the

---

[21] *See, e.g.*, *Martin v. Glass*, 571 F. Supp. 1406, 1410 (N.D. Tex. 1983); *Delta Drilling Co. v. Simmons*, 338 S.W.2d 143, 147 (Tex. 1960); *McMahon*, 303 S.W.2d at 350; *Graham v. Prochaska*, 429 S.W.3d 650, 653 (Tex. App.—San Antonio 2013, pet. filed); *Am. Trading & Prod. Corp.*, 323 S.W.2d at 477; *Wahlenmaier v. Am. Quasar Petroleum Co.*, 517 S.W.2d 390, 392 (Tex. Civ. App.—El Paso 1974, writ ref'd n.r.e.); *see also Zephyr Oil Co. v. Cunningham*, 265 S.W.2d 169, 172 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.) (lessor sought reformation of overriding royalty to include a share of the value of the gas produced, less pro rata taxes paid on the gas).

[22] *See supra* n.19.

[23] BLACK'S LAW DICTIONARY 818 (10th ed. 2014).

volume on which a royalty is due must be determined at the wellhead says nothing about whether the overriding royalty must bear postproduction costs.

This is clear from the other royalty provisions. The oil royalty is paid on all oil produced and bears postproduction costs. The gas royalty is due on all gas produced and used or sold—that is, all gas produced except that lost before sale or use. The gas royalty does not bear postproduction costs, not because it is based on a volume other than full production, but because the amount is based on the price actually received by the lessee, not the market value at the well.

Chesapeake argues that the gas royalty provision shows that when the parties wanted a postproduction-cost-free royalty, they were much more specific. But as we have already said, the additional detail in the gas royalty provision serves only, if anything, to emphasize its cost-free nature. The simple "cost-free" requirement of the overriding royalty achieves the same end.

The overriding royalty provision reads as though the royalty is in kind, but Chesapeake does not argue that it must be, and in fact the royalty has always been paid in cash. Were the Hyders to take their overriding royalty in kind, as they are entitled to do, they might use the gas on the property, transport it themselves to a buyer, or pay a third party to transport the gas to market as they might negotiate. In any event, the Hyders might or might not incur postproduction costs equal to those charged by Marketing. The lease gives them that choice. The same would be true of the gas royalty, which is to be paid in cash but can be taken in kind. The fact that the Hyders might or might not be subject to postproduction costs by taking the gas in kind does not suggest that they must be subject to those costs when the royalty is paid in cash. The choice of how to take their royalty, and the

consequences, are left to the Hyders. Accordingly, we conclude that "cost-free" in the overriding

royalty provision includes postproduction costs.

The Hyders offer another reason for our conclusion. They argue that the lease's disclaimer

of any application of the holding of *Heritage Resources* shows that the parties intended an overriding

royalty free of postproduction costs. That case involved royalty provisions based on the market value

of gas at the well with "no deductions from the value of the Lessor's royalty by reason of any"

postproduction costs.[24] The Court concluded that the no-deductions phrase was unambiguous and

ineffective to free the royalties from postproduction costs. Justice Owen's concurring opinion, which

became the plurality opinion for the Court,[25] explained:

> There is little doubt that at least some of the parties to these agreements
> subjectively intended the phrase at issue to have meaning. However, the use of the
> words "deductions from the value of Lessor's royalty" is circular in light of this and
> other courts' interpretation of "market value at the well." The concept of
> "deductions" of marketing costs from the value of the gas is meaningless when gas
> is valued at the well. Value at the well is already net of reasonable marketing costs.
> The value of gas "at the well" represents its value in the marketplace at any given
> point of sale, less the reasonable cost to get the gas to that point of sale, including
> compression, transportation, and processing costs. Evidence of market value is often
> comparable sales, as the Court indicates, or value can be proven by the so-called
> net-back approach, which determines the prevailing market price at a given point and
> backs out the necessary, reasonable costs between that point and the wellhead. But,
> regardless of how value is proven in a court of law, logic and economics tell us that
> there are no marketing costs to "deduct" from value at the wellhead.
>     . . . .

---

[24] *Heritage Res.*, 939 S.W.2d at 120–121.

[25] Justice Baker initially delivered the opinion for the Court, joined by Chief Justice Phillips, Justice Cornyn, Justice Enoch, and Justice Spector. *Id.* at 120. Justice Owen, joined by then-Justice Hecht, concurred in the judgment. *Id.* at 124. Justice Gonzalez, joined by Justice Abbott, dissented. *Id.* at 131. On rehearing, Chief Justice Phillips joined Justice Owen, Justice Cornyn and Justice Spector joined Justice Gonzalez, and Justice Enoch recused himself. 960 S.W.2d 619, 620 (Tex. 1997) (Gonzalez, J., dissenting on denial of motion for rehearing).

> As long as "market value at the well" is the benchmark for valuing the gas, a phrase prohibiting the deduction of post-production costs from that value does not change the meaning of the royalty clause. . . . All costs would already be borne by the lessee. It could not be said under that circumstance that the clause is ambiguous. It could only be said that the proviso is surplusage.[26]

Market value, if calculated without reference to factors necessary to that determination, is not market value.

*Heritage Resources* does not suggest, much less hold, that a royalty cannot be made free of postproduction costs. *Heritage Resources* holds only that the effect of a lease is governed by a fair reading of its text. A disclaimer of that holding, like the one in this case, cannot free a royalty of postproduction costs when the text of the lease itself does not do so. Here, the lease text clearly frees the gas royalty of postproduction costs, and reasonably interpreted, we conclude, does the same for the overriding royalty. The disclaimer of *Heritage Resources*' holding does not influence our conclusion.

\*     \*     \*     \*     \*

The court of appeals' judgment is affirmed.

Nathan L. Hecht
Chief Justice

Opinion delivered: June 12, 2015

---

[26] 939 S.W.2d at 130–131 (citations omitted).